NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

CHRISTOPHER WELCH,                :    CIV. NO. 21-4526 (RMB)
                                  :
           Plaintiff              :
                                  :
     v.                           :         **OPINION**
                                  :
COUNTY OF BURLINGTON, *et al.*,   :
                                  :
                                  :
           Defendants             :

BUMB, DISTRICT JUDGE

    Plaintiff Christopher Welch, a pretrial detainee confined in the Burlington County Detention Center ("BCDC"), brings this pro se civil rights action under 42 U.S.C. § 1983 as a putative class action. (Compl., Dkt. No. 1.) Plaintiff filed an application to proceed *in forma pauperis* ("IFP") (Dkt. No. 1-2), which establishes his financial eligibility to proceed without prepayment of fees under 28 U.S.C. § 1915.

    When a prisoner is permitted to proceed without prepayment of the filing fee or when the prisoner pays the filing fee for a civil action regarding prison conditions and seeks redress from a governmental entity, officer or employee of a governmental entity, 28 U.S.C. §§ 1915(e)(2)(B); 1915A(b) and 42 U.S.C. § 1997e(c)(1) require courts to review the complaint and *sua sponte* dismiss any claims that are (1) frivolous or malicious; (2) fail to state a

1

claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief. For the reasons discussed below, the Court will proceed in part and dismiss in part the complaint.

I.   *Sua Sponte* Dismissal

Courts must liberally construe pleadings that are filed *pro se*. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). "Court personnel reviewing *pro se* pleadings are charged with the responsibility of deciphering why the submission was filed, what the litigant is seeking, and what claims she may be making." See Higgs v. Atty. Gen. of the U.S., 655 F.3d 333, 339-40 (3d Cir. 2011) (quoting Jonathan D. Rosenbloom, Exploring Methods to Improve Management and Fairness in Pro Se Cases: A Study of the Pro Se Docket in the Southern District of New York, 30 Fordham Urb. L.J. 305, 308 (2002)).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556.) Legal conclusions, together with threadbare recitals of the elements of a cause of action, do not suffice to state a claim. Id.

Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. If a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice but must permit the amendment. Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002).

II.  DISCUSSION

    A.   The Complaint

Plaintiff alleges the following facts in his complaint, accepted as true for purposes of screening for dismissal pursuant to 28 U.S.C. §§ 1915(e)(2)(B); 1915A(b) and 42 U.S.C. § 1997e(c)(1).[1] Plaintiff has been confined in BCDC in Mount Holly,

---

[1] Although courts must accept a plaintiff's allegations as true upon screening the complaint for dismissal, plaintiffs remain subject to the requirements, and possible sanctions for violation, of Federal Rule of Civil Procedure 11, which provides in relevant part:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and

New Jersey since February 21, 2020. When he arrived from another detention center, he had a 30-day supply of seizure medication. Staff at BCDC did not timely refill his seizure medication, and he went without it from March 17 through March 19, 2020. He had a grand mal seizure on March 20, 2020, and he was sent to Virtua Memorial Hospital in Mount Holly, New Jersey. He was not given his seizure medication at BCDC on March 21, 2020 because it had not yet been refilled.

Plaintiff also had a pre-existing back condition. From February 21, 2020, his day of arrival at BCDC, through March 17, 2020, he filed sick call request slips seeking evaluation by an outside orthopedic specialist but he received no response. Every day, Plaintiff suffered from pain in his back because he was forced to climb stairs. Plaintiff continued to submit sick call requests

---

belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

Fed. R. Civ. P. 11(b).

from March 21, 2020, to May 7, 2020, to see an outside specialist but received no a response. On May 2, 2020, Nurse Practitioner Connie prescribed Plaintiff a double mattress.

In April 2020, Plaintiff advised Lieutenant R. Clugsten, Correctional Officer S. Moore, and Sergeant Donovan that he had a rash all over his body and difficulty breathing, which Plaintiff attributed to mold he saw in the unit. Clugsten told Plaintiff that he could not transfer him to another cell, but after Plaintiff was reviewed by the mental and medical health units, Clugsten transferred Plaintiff to a different cell in the same unit. On May 16, 2020, Plaintiff wrote a letter to Warden Matthew Leith and County Commissioner Felicia Hopson, complaining that there was mold all over the I, B, and D-wings, and a correctional officer had told him there was mold in the jail for more than eight years and nothing could be done about it.

Plaintiff also complains about the conditions associated with the COVID-19 pandemic. He alleges that since the end of March 2020 and through the date he filed the complaint, pretrial detainees have been in "lock-down" with only fifteen minutes of recreation time per day. Detainees have been unable to use the law library and are provided only fifteen minutes to shower and make phone calls. They are unable to clean the cells and unit housing areas. The lack of recreation time has worsened Plaintiff's back condition and caused him to suffer from depression. Inmates were not tested

for COVID-19.

Plaintiff further alleges interference with his mail. In May 2020, Plaintiff noticed his legal mail was opened outside his presence. He was informed that it "came opened from the law firm," and upon inspection by corrections staff, his legal mail contained the personal information of a female staff member. After this incident, Plaintiff alleges staff continued to open his legal mail outside his presence, they held all his mail for weeks, and sometimes returned his mail to the sender.

On October 28, 2020, Plaintiff was reviewing electronic discovery from a thumb drive that was sent to him by his defense lawyer. He was printing pictures from a file when an officer told him that he could not print the pictures. Sergeant Peer was advised of the pictures and he reviewed them and gave the thumb drive to Lieutenants Blango and Ptaszenski. They copied the contents of the thumb drive and turned a copy over to the Burlington County Prosecutor's Office. On November 10, 2020, Plaintiff was advised that the thumb drive would be returned to him with all of its contents, but he was prohibited from printing the pictures, which were contraband.

Plaintiff alleges that the corrections officers were agents of the prosecutor's office and were supplying the prosecutor with Plaintiff's legal materials and work product. Staff continued to open, read, and copy Plaintiff's incoming and outgoing regular

mail and legal mail. On January 4, 2021, Plaintiff's legal mail was opened outside his presence, and Sergeant J. Williams told Plaintiff that he received the already opened legal mail from Lieutenants Blango and Ptaszenski. Plaintiff filed a grievance but did not receive a response. At the time of filing the complaint, Plaintiff's legal mail continued to be opened by a supervisor who wore a body camera. Therefore, Plaintiff's legal mail could be reviewed later on video.

Plaintiff also alleges that since November 2020, he has been forced to sleep on a bed on the floor as the third man in a cell designed for two men ("triple-celling"). He asserts a putative class action for overcrowding. Urine splashed on his mattress due to the proximity to the toilet, and sleeping on the floor worsened his back condition. The triple-celling occurred during a pandemic where public health guidelines required social distancing of six feet.

Prior to his triple-celling, on June 10, 2020, Plaintiff filed an appeal of a grievance he had written because medical staff were not testing inmates for COVID-19. Lieutenants Blango and N. Ptaszenski warned Plaintiff that if he sued the facility, he would immediately be sent to a dirtier facility with poorer access to a law library. Finally, Plaintiff alleges there were empty cells available, and he was forced to sleep in a three-man cell in retaliation for filing grievances.

Throughout the complaint, Plaintiff alleges that Defendants failed to provide him with grievance forms when requested, and other times they failed to respond to his grievances and/or failed to return the grievances to him so he could appeal.

With respect to the supervisory Defendants, Plaintiff alleges that he informed Warden Matthew Leith and County Commissioner Felicia Hopson, by letter dated May 7, 2020, that staff flagrantly disregard grievances and appeals of grievances and that Lieutenants Blango and Ptaszenski were opening his legal mail and sending it to the prosecutor's office. He further advised them by letter of all other issues alleged in the complaint, but they did nothing. Plaintiff lists a number of lawsuits filed against BCDC officials and staff, and alleges the supervisory defendants have a 19-year history of permitting similar constitutional violations to occur.

Plaintiff further names CFG Health Systems, LLC ("CFG"), its CEO, Les Paschall, and Health Services Administrator Doris Yaa as defendants. He alleges CFG contracted to provide for the medical needs of inmates at BCDC, where CFG exercises complete control. He further alleges these defendants have an unwritten policy or practice of not providing medically necessary treatment by specialists or purposefully delaying treatment by specialists for the purpose of saving money. In support of his policy/custom claim, Plaintiff lists a number of lawsuits filed over the course of

sixteen years.

B. Claims Under 42 U.S.C. § 1983 and the New Jersey Civil
Rights Act ("NJCRA") N.J.S.A. 10:6-1 *et seq.*

A plaintiff may assert a cause of action under 42 U.S.C. § 1983 for violations of his constitutional rights. Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

To state a claim for relief under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States, and that the constitutional deprivation was caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1998); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

Plaintiff also alleges claims under the New Jersey Constitution. "The language of the NJCRA and § 1983 are comparable[.]" Williams v. Ponik, 822 F. App'x 108, 111 (3d Cir. 2020) (citing Perez v. Zagami, LLC, 218 N.J. 202, 94 A.3d 869, 875 (2014) (noting that the NJCRA was intended to be analogous to § 1983)). "[W]hen pled together, they are analyzed under the same standard[.]" Pettit v. New Jersey, No. CIV. A. 09-CV-3735, 2011 WL

1325614 at *4 (D.N.J. Mar. 30, 2011); see also Hottenstein v. Sea Isle City, 793 F. Supp. 2d 688, 695 (D.N.J. 2011). Thus, the Court will analyze Plaintiff's § 1983 and NJCRA claims together.

  1.  First Amendment Freedom of Speech and Sixth Amendment Right to Effective Assistance of Counsel

"The First Amendment, as incorporated in the Fourteenth, prohibits states from 'abridging the freedom of speech.'" Jones v. Brown, 461 F.3d 353, 358 (3d Cir. 2006) (quoting U.S. Const. Amend. I.) "A state pattern and practice … of opening legal mail outside the presence of the addressee inmate interferes with protected communications, strips those protected communications of their confidentiality, and accordingly impinges upon the inmate's right to freedom of speech." Id. at 360. A policy or practice of opening a prisoner's legal mail may, however, pass Constitutional muster if it satisfies the Turner test. Id. at 362. In Turner v. Safely, the Supreme Court held that held a prison regulation that impinges on the constitutional rights of prisoners is nonetheless valid, so long as the regulation "is reasonably related to legitimate penological interests." Jones, 461 F.3d at 358. Inmates also have a "right to receive and send [personal] mail" that "can be restricted for legitimate penological interests." Nixon v. Sec'y Pennsylvania Dep't of Corr., 501 F. App'x 176, 178 (3d Cir. 2012) (citations omitted).

The Court will let this claim proceed against Lieutenants P. Blango, N. Ptaszenski and John and Jane Does 1-10, those alleged

to have opened Plaintiff's legal mail outside his presence. The factual issue of whether there was a legitimate penological interest to interfere with Plaintiff's legal or personal mail cannot be resolved at this early stage of the litigation. "Allegations of inspection or interference with an inmate's legal mail also may implicate the inmate's Sixth Amendment right to communicate freely with his attorney in a criminal case." Richardson v. Morris Cty. Corr. Facility, No. CIV.A. 06-2340 (DMC), 2006 WL 3000234, at *6 (D.N.J. Oct. 20, 2006) (citing Wolff v. McDonnell, 418 U.S. 539, 575 (1974)). Plaintiff's Sixth Amendment claim may also proceed against these defendants, although the Court makes no finding as to the merit of the claim.

The Court will dismiss without prejudice the First Amendment claim against Sergeant Peer, who is alleged to have reviewed the contents of the thumb drive after being advised that Plaintiff was violating a prison rule by printing the pictures saved on it. Sergeant Peer then allegedly handed the thumb drive over to Lieutenants Blango and Ptaszenski. According to the allegations, Peer neither opened the legal mail outside Plaintiff's presence nor participated in copying the contents and sending it to the prosecutor's office. The Court will also dismiss the First Amendment claim against J. Williams, whom Plaintiff alleges "acted in concert" with others to send the materials from the thumb drive to the prosecutor's office. "Under the notice-pleading standard,

11

a complaint must include more than 'conclusory allegations of concerted action....'" Durham v. City & Cty. of Erie, 171 F. App'x 412, 415 (3d Cir. 2006) (quoting Abbott v. Latshaw, 164 F.3d 141, 148 (3d Cir. 1998). Plaintiff has not alleged any facts describing how J. Williams acted in concert with the others. This claim will be dismissed without prejudice.

Supervisors are not vicariously liable for their employees under § 1983. Iqbal, 556 U.S. at 676. Instead, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id.

> There are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations.

Santiago v. Warminster Twp., 629 F.3d 121, 129 (3d Cir. 2010) (internal quotations omitted).

Here, Plaintiff seeks to hold Warden Leith and County Commissioner Felicia Hopson liable because he wrote to them about the interference with his legal mail and they failed to respond. Transmission of a grievance alone is insufficient to show knowledge and acquiescence in a constitutional violation. See e.g. Rode v.

Delarciprete, 845 F.2d 1195, 1208 (3d Cir. 1988) (writing a grievance to a supervisory defendant, whose office receives a large number of written complaints, is insufficient to establish the defendant's personal knowledge of and acquiescence in a constitutional violation.) Therefore, Plaintiff's claims against Leith and Hopson may not proceed on this basis.

Plaintiff also seeks to hold Captain T. Blango and Captain Iman liable because he wrote to them about the alleged interference with his mail, but staff continued to interfere with his mail until the filing of this complaint. Plaintiff, however, also alleges that Captain Iman responded to his grievance, but does not describe his response. (Compl., ¶50.) The Court cannot conclude on these facts that Captain T. Blango and Captain Iman had knowledge of and acquiesced in continued interference with Plaintiff's mail because Captain Iman may have responded that he and Captain Blango properly addressed Plaintiff's grievance, and yet the interference with Plaintiff's mail continued without their acquiescence. Thus, the First Amendment freedom of speech claims against Captain T. Blango and Captain Iman are dismissed without prejudice.

Plaintiff's supervisory liability claims against Leith, Hopson and Burlington County based on the alleged longstanding custom of permitting interference with detainees' legal mail are addressed in Section II.C. below.

　　　　　*2.   First Amendment Retaliation*

There are three elements to a First Amendment retaliation claim: (1) constitutionally protected conduct; (2) the plaintiff suffered adverse action at the hands of prison officials; (3) and the constitutionally protected conduct was a substantial or motivating factor for the adverse action. Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016). For the third element, a prisoner may "satisfy his burden with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." Watson, 834 F.3d at 422.

In the complaint, Plaintiff alleges that due to overcrowding he was triple-celled, but he also alleges that there were empty cells available and he was triple-celled in retaliation for filing grievances. Plaintiff does not identify any specific time where he was allegedly triple-celled based on overcrowding and distinguish when he was allegedly triple-celled in retaliation for filing grievances when empty cells were available. Plaintiff specifically alleges "[d]uring the course of plaintiff's pre-trial detention from 02/21/2020 until present, there has been an overcrowding issue." (Compl., ¶67.) Therefore, the Court will dismiss the retaliation claim against Sergeant Peer, J. Williams, and the supervisory defendants without prejudice.

14

Plaintiff alleges a second retaliation claim. On June 10, 2020, he filed an appeal to a grievance he had written about medical staff not testing inmates for COVID-19. He alleges that Lieutenants Blango and N. Ptaszenski warned him if he sued the facility, he would immediately be sent to a dirtier facility with poorer access to a law library. "Verbal threats" as alleged here, in comparison to other actions found by the Third Circuit to constitute adverse actions in support of a retaliation claim, such as several months in disciplinary confinement, denial of parole, financial penalties, and transfer to an institution whose distance made regular family visits impossible "are not sufficiently adverse to support a retaliation claim." Dunbar v. Barone, 487 F. App'x 721, 723 (3d Cir. 2012). Therefore, the Court will dismiss this claim without prejudice.

### 3.   Fourteenth Amendment Conditions of Confinement

### a.   *Triple-celling*

The Fourteenth Amendment Due Process Clause protects pretrial detainees against punishment "prior to an adjudication of guilt in accordance with due process of law." Hubbard v. Taylor, 538 F.3d 229, 231 (3d Cir. 2008) (quoting Bell v. Wolfish, 441 U.S. 520, 535 (1979)). To state a claim that pretrial conditions amount to punishment,

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a

> showing of an expressed intent to punish on
> the part of the detention facility officials,
> that determination generally will turn on
> 'whether [the disability has] an alternative
> purpose ... and whether it appears excessive
> in relation to [that] purpose.' ... Thus, if
> a particular condition or restriction of
> pretrial detention is reasonably related to a
> legitimate governmental objective, it does
> not, without more, amount to 'punishment.'
> Conversely, if a restriction or condition is
> not reasonably related to a legitimate goal—
> if it is arbitrary or purposeless—a court
> permissibly may infer that the purpose of the
> governmental action is punishment that may not
> constitutionally be inflicted upon detainees
> qua detainees.

Hubbard, 538 F.3d at 232 (quoting Bell, at 538-39.) (citation

omitted in Hubbard.) "Double or triple-bunking of cells, alone, is

not per se unconstitutional." North v. White, 152 F. App'x 111,

113 (3d Cir. 2005) (citing Union County Jail Inmates v. DiBuono,

713 F.2d 984, 1000 (3d Cir. 1983).

Plaintiff alleges that he was triple-celled during a pandemic

in violation of public health guidelines for social distancing and

that inmates were not tested for COVID-19. Additionally, he alleges

detainees were permitted only fifteen minutes per day for

recreation time, no access to the law library,[2] and insufficient

time to shower and make phone calls.

---

[2] Plaintiff's allegation of his inability to access the law library
fails to a state a separate First Amendment claim because there is
no freestanding right to a law library. See Lewis v. Casey, 518 U.S.
343, 351 (1996) (holding that to state an access to courts claim,
inmates must allege an actual injury, loss of the opportunity to
present a meritorious claim.)

In the absence of an expressed intent to punish, Plaintiff's claim must be evaluated with respect to the restrictions imposed in BCDC due to the COVID-19 pandemic. Plaintiff has not alleged how the conditions are excessive in light of any justification for the restrictions to reduce the spread of COVID-19. The Court will dismiss the Fourteenth Amendment conditions of confinement claim without prejudice. Plaintiff should allege additional facts concerning how the restrictions were excessive in light of a legitimate purpose in protecting inmate health. Further, with respect to Plaintiff's allegation of triple-celling during the pandemic, he should allege whether other space was available to house inmates and whether the jail had access to COVID-19 tests but refused to test inmates. See Hope v. Warden York Cty. Prison, 972 F.3d 310, 326 (3d Cir. 2020) (quoting Bell v. Wolfish, 441 U.S. 520, 545–46 (1979) ("In assessing whether conditions and restrictions are excessive given their purposes, the courts must acknowledge that practical considerations of detention justify limitations on 'many privileges and rights.'")

> b.   *Presence of mold in the facility*

Plaintiff alleges that he made corrections staff aware of the presence of mold throughout the facility, which caused him to suffer severe difficulty breathing and an all-over body rash, but they did nothing to remove the mold. Further, he alleges an officer told him there had been mold in the facility for more than

eight years, and there was nothing that could be done about it.

"Unconstitutional punishment typically includes both objective and subjective components." Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether 'the deprivation [was] sufficiently serious' and the subjective component asks whether 'the officials act[ed] with a sufficiently culpable state of mind[.]'" Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

Mold throughout a prison is unpleasant but not necessarily serious enough to amount to punishment. The fact that Plaintiff allegedly developed a rash and difficulty breathing after exposure to mold presents a closer call, but Plaintiff has not alleged that medical staff diagnosed him with a mold allergy or other reaction to the mold or directed that he could not be housed near mold, nor did he allege his symptoms were not controllable with treatment. Therefore, the Court concludes Plaintiff has failed to allege a sufficiently serious threat to his health from mold as to constitute punishment under the Fourteenth Amendment. See e.g. Johnakin v. Berks Cty. Jail Sys., No. 19-CV-3989, 2019 WL 4722214, at *3 (E.D. Pa. Sept. 25, 2019) (collecting cases). The Court will dismiss this claim without prejudice.

4.    *Fourteenth Amendment Due Process Right to Adequate Medical Care*

Plaintiff asserts two claims of inadequate medical care: (1)

failure to provide him with his prescribed seizure medication for three days, resulting in Plaintiff having a grand mal seizure; and (2) delay in sending him to an orthopedic specialist for evaluation of disc herniation and sciatica, for the purpose of saving money on medical care. Plaintiff alleges he was forced to climb stairs every day, which caused his back pain.

In the Third Circuit, Fourteenth Amendment claims for inadequate medical care are analyzed "under the standard used to evaluate similar claims brought under the Eighth Amendment[.]" Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) Thus, "[o]nly 'unnecessary and wanton infliction of pain' or 'deliberate indifference to the serious medical needs' of prisoners are sufficiently egregious to rise to the level of a constitutional violation." Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (quoting White v. Napoleon, 897 F.2d 103, 108-09 (3d Cir. 1990) (quoting Estelle v. Gamble, 429 U.S. 97, 10 (1976) (quoting Gregg v. Georgia, 428 U.S. 153 (1976)). Allegations of malpractice or disagreement as to the proper medical treatment are insufficient to establish a constitutional violation. Id.

Deliberate indifference to serious medical needs may be shown where a medical professional intentionally inflicts pain on a prisoner or where a prison authority denies a reasonable request for medical treatment, exposing an inmate to undue suffering or threat of tangible residual injury or "where 'knowledge of the

need for medical care [is accompanied by the] ... intentional refusal to provide that care.'" <u>Spruill</u>, 372 F.3d at 235 (quoting <u>Ancata v. Prison Health Servs.</u>, 769 F.2d 700, 704 (11th Cir. 1985)) (alterations in original)). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." <u>Monmouth Cty. Corr. Inst. Inmates v. Lanzaro</u>, 834 F.2d 326, 347 (3d Cir. 1987).

Plaintiff alleges that he entered BCDC on February 21, 2020 with enough prescription seizure medication for 30 days, and this was processed by the BCDC medical department. (Compl., ¶26.) He also alleges he ran out of his seizure medication on March 5, 2020 and went into a grand mal seizure on March 21, 2020, because he did not receive his seizure medication on March 17, 18 and 19, 2020. (Compl., ¶¶27-28.) Plaintiff does not explain how he ran out of seizure medication on March 5, when he had enough medication for 30 days on February 21, nor does he explain whether he received seizure medication from March 5 through March 17, the date he alleges that he stopped receiving his seizure medication. More importantly, Plaintiff has not explained how staff was deliberately indifferent to his need for seizure medication. For instance, was staff aware that Plaintiff was out of seizure medication on March 5 or prior to March 17, 2020, but refused to reorder the medication. Plaintiff must plead additional facts to establish that deliberate

indifference by staff led to his deprivation of prescribed seizure medication. See e.g. Parker v. Butler Cty., Pennsylvania, 832 F. App'x 777, 781 (3d Cir. 2020) (finding the record did not show any action taken by the defendant to deliberately delay treatment).

Plaintiff further alleges that he suffered from cervical and lumbar disc herniation that caused him pain when he had to walk up and down stairs every day. Specifically, he alleges

> From 02/21/2020 to 03/17/2020 plaintiff filled out (9) sick call slips explaining due to his disc herniation's [sic] in his lumbar & cervical he was not able to walk up & down steps, which he was being forced to do every single day by the Correctional Officers, requested to see the Orthopedic Specialist, and advised the medical staff of his sciatic nerve issues.
>
> From 03/21/2020 until 05/07/2020 (11) more sick call slips were submitted to the medical department through sick call slips with no response to no sick call(s) pertaining to the issues plaintiff had raised about his lumbar, cervical herniation & sciatic nerve issue(s). Plaintiff was never given any response to his none of his complaints but plaintiff was ordered by the Nurse Practitioner Connie a 'double mattress' on 05/02/2020.

(Compl., ¶¶28, 29.)

Again, Plaintiff's allegations are unclear. He alleges he used sick call slips to seek evaluation by an orthopedic specialist outside the prison. What is not clear is whether Plaintiff requested, in any sick call slip, to be seen by BCDC medical staff for his back pain and staff refused to see him for this condition. Further, Plaintiff has not alleged that medical staff failed to provide any

treatment for his back pain or how staff was deliberately indifferent by failing to arrange for immediate outside evaluation, particularly in a pandemic when many facilities were under capacity and other restrictions. Therefore, the Court will dismiss this claim without prejudice. Because Plaintiff has not stated a Fourteenth Amendment due process claim for inadequate medical care, the Court need not address the policy/custom liability claims against CFG, CEO Les Paschall, and Health Administrator Doris Yaa at this time.

    5.    *Section 1983 Claims Regarding Grievances*

    Plaintiff alleges that BCDC staff and officials did not follow their internal grievance procedures, prevented him from exhausting his administrative grievances, and failed to respond to his claims of hazardous conditions and staff negligence or misconduct. "The law does not recognize a stand-alone due process claim regarding access to the prison grievance program." Harris v. Wetzel, 822 F. App'x 128, 130 (3d Cir. 2020) (citing Burnside v. Moser, 138 F. App'x 414, 416 (3d Cir. 2005) (additional citations omitted)). Therefore, Plaintiff fails to state a § 1983 or NJCRA claim based on the unavailability of the administrative grievance procedure. Amendment of this claim is futile because the conduct alleged does not violate a federal statute or constitutional right. However, Plaintiff's allegations may, at the appropriate time, be relevant to whether the grievance program was available to him for purposes of exhausting administrative remedies pursuant to the Prison

Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). See <u>Ross v.</u>
<u>Blake</u>, 136 S. Ct. 1850, 1855 (2016)) ("[a] prisoner need not
exhaust remedies [under the PLRA] if they are not 'available.'")

### 6.   <u>Fourth Amendment and Eighth Amendment claims</u>

Plaintiff alleges a claim under the Fourth Amendment, which
this Court assumes is related to the allegations of tampering with
his mail. The Fourth Amendment does not apply to the search of a
prisoner's mail. See <u>Saleem v. Bonds</u>, No. CV181159RBKKMW, 2019 WL
413533, at *2 (D.N.J. Jan. 31, 2019) (collecting cases). Therefore,
the Court will dismiss the Fourth Amendment claim under § 1983 and
the NJCRA with prejudice, because amendment is futile.

The protections of the Eighth Amendment's Cruel and Unusual
Punishments Clause do not apply until "'after conviction and
sentence.'" <u>Fuentes v. Wagner</u>, 206 F.3d 335, 344 n. 11 (3d Cir.
2000) (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 392 n. 6 (1989)).
Plaintiff alleges he was a pretrial detainee at all relevant times
to this action. Therefore, he has failed to state a § 1983 or NJCRA
claim under the Eighth Amendment, and these claims will be
dismissed with prejudice.

### C.   <u>Section 1983 and NJCRA Supervisory Liability Claims</u>

#### 1.   *Policy/custom claims against Warden Leith, County*
*Commissioner Hopson and Burlington County*

Plaintiff seeks to hold Warden Leith, County Commissioner
Felicia Hopson, and Burlington County liable based on a custom of
similar constitutional violations to those he alleges in the

complaint. Plaintiff cites to sixteen federal civil rights actions filed by inmates of BCDC between 2002 and 2016. "[I]f alleging [§ 1983 liability of a supervisory defendant based on] a custom, the plaintiff must evince a given course of conduct so well-settled and permanent as to virtually constitute law." Forrest v. Parry, 930 F.3d 93, 105-06 (3d Cir. 2019), cert. denied sub nom. City of Camden, New Jersey v. Forrest, 140 S. Ct. 902 (2020) (citing Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997)).

Although Plaintiff has alleged sufficient facts to state a claim for violation of the First Amendment by interference with his mail and of his Sixth Amendment right to effective assistance of counsel by sending his legal mail to the prosecutor's office, this Court is unable to discern from the face of the complaint whether the cases cited by Plaintiff establish that the alleged First and Sixth Amendment violations were a custom "so well-settled and permanent" at BCDC as to "virtually constitute law." While Plaintiff may rely on evidence of prior cases, he must plead the particular constitutional violations alleged in those cases in support of his allegations of an unconstitutional custom. The Court will dismiss the policy/custom supervisory liability claims under § 1983 and the NJCRA against Warden Leith, County Commissioner Hopson and Burlington County without prejudice.

D.   Claims under New Jersey Tort Law

Plaintiff alleges that he raised all of his issues in a Tort

Claim notice filed in May 2020, as required to bring tort claims against public entities and employees under the New Jersey Tort Claims Act, N.J.S.A. § 59:1-1 *et seq.* Plaintiff asserts negligence and intentional infliction of emotional distress claims against all defendants.

Public entities are not vicariously liable "for intentional torts committed by its employees[.]" Mesadieu v. Union Cty., No. CV 17-9014 (JMV/JBC), 2019 WL 2004308, at *7 (D.N.J. May 6, 2019) (citing Hoag v. Brown, 397 N.J. Super. 34, 54 (App. Div. 2007) (additional citations omitted)). Therefore, the Court will dismiss the intentional infliction of emotional distress claim against Burlington County with prejudice.

With respect to the individual defendants,

> [t]o establish an intentional infliction of emotional distress claim under New Jersey law, a plaintiff must show (1) that the defendant intended to cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the actions proximately caused emotional distress; and (4) that plaintiff's emotional distress was severe. *Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 544 A.2d 857, 863 (1988); *Horvath v. Rimtec Corp.*, 102 F.Supp.2d 219, 235 (D.N.J. 2000) (Irenas, J.). To establish extreme and outrageous conduct, a plaintiff must show conduct "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Buckley*, 544 A.2d at 863 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

Witherspoon v. Rent-A-Ctr., Inc., 173 F. Supp. 2d 239, 242 (D.N.J.

2001). None of the conduct alleged in the complaint rises to the level required to establish extreme and outrageous conduct. The Court will dismiss these claims without prejudice.

Plaintiff's negligence claims against Lieutenants Blango and Ptaszenski for interference with his mail may proceed. Plaintiff's medical negligence claims may proceed against Health Administrator Doris Yaa and CFG, Health Systems LLC, subject to any affirmative defenses that might be raised after service of the complaint. Apart from the medical supervisory personnel and the medical contractor, Plaintiff has not identified a specific medical defendant who committed malpractice and caused his injury by not timely refilling his seizure medication or by delay in scheduling an outside orthopedic evaluation. Further, Plaintiff does not allege an injury caused by the failure to provide COVID-19 testing. Therefore, these negligence claim are dismissed without prejudice. The remainder of Plaintiff's negligence claims are dismissed without prejudice because Plaintiff has not sufficiently alleged how each defendant owed Plaintiff a duty and breached the appropriate standard of care, causing Plaintiff to suffer an injury.[3] See Boos v. Nichtberger, 2013 WL 5566694, *4 (N.J. Super.

_____

[3] See N.J. Stat. Ann. § 59:9-2(d):

> No damages shall be awarded against a public
> entity or public employee for pain and suffering
> resulting from any injury; provided, however,
> that this limitation on the recovery of damages
> for pain and suffering shall not apply in cases

Ct. App. Div. ("App. Div.") Oct. 10, 2013) (citing Endre v. Arnold, 692 A.2d 97 (App. Div. 1997) (describing elements of New Jersey negligence claim)). "It is vital that plaintiff establish that his injury was proximately caused by the unreasonable acts or omissions of the defendant." Id. (citing Camp v. Jiffy Lube No. 114, 706 A.2d 1193 (App. Div.), cert. denied, 718 A.2d 1215 (1998)) (other citation omitted).

    E.   Requests for Injunctive Relief

"To obtain injunctive relief, a party must show a likelihood of success on the merits, irreparable harm if the injunction is not granted, that relief will not cause greater harm to the nonmoving party, and that relief is in the public interest." Shelley v. Metzger, 832 F. App'x 102, 104-05 (3d Cir. 2020) (citing Miller v. Mitchell, 598 F.3d 139, 147 (3d Cir. 2010). "The third and fourth factors merge when the Government is the opposing party." Id. (quoting Nken v. Holder, 556 U.S. 418, 435 (2009)).

In his complaint, Plaintiff requested the following

---

of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00. For purposes of this section medical treatment expenses are defined as the reasonable value of services rendered for necessary surgical, medical and dental treatment of the claimant for such injury, sickness or disease, including prosthetic devices and ambulance, hospital or professional nursing service.

preliminary (and permanent) injunctive relief, that defendants refrain from (1) opening, copying, and inspecting his outgoing and incoming regular and legal mail; (2) denying or delaying medically necessary treatment by an outside medical specialist; (3) housing three men in a cell designed for two men; and (4) that they clean all mold from the housing units of BCDC. Apart from the allegations contained in the complaint, Plaintiff did not address the requisite factors for injunctive relief; likelihood of success on the merits, irreparable harm if the injunction is not granted, and that relief is in the public interest and will not cause greater harm to the nonmoving party. See e.g. Wesley v. Sec'y Pennsylvania Dep't of Corr., 569 F. App'x 123, 125 (3d Cir. 2014) ("the moving party must make a clear showing of immediate irreparable harm." Wesley v. Sec'y Pennsylvania Dep't of Corr., 569 F. App'x 123, 125 (3d Cir. 2014)) (citing Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3d Cir. 1992) (internal quotations omitted)). Therefore, Plaintiff's requests for preliminary injunctive relief are denied without prejudice.

Plaintiff filed subsequent letter requests for injunctive relief, but his requests are based on new claims not alleged in the complaint, namely (1) that he has been transferred to Mercy County Correctional Center ("MCCC") and staff at BCDC refuse to forward his thumb drive, which contains discovery for his criminal proceedings, and they refuse to forward Plaintiff's other personal

property from BCDC; and (2) he seeks an order directing that he receive three hours of law library time per week at any facility where he is incarcerated. (Letter Request, Dkt. No. 5) In his second request (Dkt. No. 6), Plaintiff acknowledges that he subsequently received his thumb drive from BCDC, but he did not receive the remainder of his personal property or three hours per week law library time. In his third letter request for injunctive relief, Plaintiff complains that he is receiving only one hour of law library time at MCCC, and sometimes less than an hour. (Dkt. No. 8.)

Prior to seeking preliminary injunctive relief, Plaintiff must file an amended complaint or a new complaint that asserts the new claims raised in his letter requests. Additionally, Plaintiff must address the factors described above to show that he is entitled to injunctive relief.

III. CONCLUSION

For the reasons stated above, the complaint is dismissed in part and may proceed in part, and Plaintiff's requests for preliminary injunctive relief are denied without prejudice.

An appropriate order follows.


DATE:  **August 5, 2021**

                        s/Renée Marie Bumb
                        **RENÉE MARIE BUMB**
                        **United States District Judge**